IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MUTUAL OF OMAHA INSURANCE COMPANY (a Nebraska corporation)<br><br>Plaintiff,<br><br>v.<br><br>GANGSTA DOG LLC (a Virginia limited liability company)<br><br>Defendant | Case No. _____<br><br>**COMPLAINT FOR SERVICE MARK AND TRADEMARK DILUTION**<br><br>**Demand for Jury Trial at Omaha** |

Plaintiff Mutual of Omaha Insurance Company, for its complaint against Defendant Gangsta Dog LLC, hereby alleges as follows:

**THE PARTIES**

1. Plaintiff Mutual of Omaha Insurance Company ("Mutual of Omaha") is a Nebraska corporation having its principal place of business at 3300 Mutual of Omaha Plaza, Omaha, Nebraska 68175.

2. On information and belief, Defendant Gangsta Dog LLC ("Gangsta Dog") is a Virginia limited liability company having its principal place of business at 932 East Ocean View Avenue, Norfolk, Virginia 23503.

**JURISDICTION AND VENUE**

3. This is an action for service mark and trademark dilution arising under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, and the statutes and common law of the State of Nebraska, based on Gangsta Dog's unauthorized use of Mutual of Omaha's federally-registered service mark and trademark WILD KINGDOM in connection with dog food that Gangsta Dog

sells under the name WILD KINGDOM ("WILD KINGDOM Dog Food"). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and arises in part under the laws of the United States.

4. This Court has jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367 and has personal jurisdiction over Gangsta Dog pursuant to Neb. Rev. Stat. § 25-536 based on Gangsta Dog's transaction of business and causation of tortious injury in the State of Nebraska, as described herein. For example, on information and belief, through its *gangstadog.com* online store, Gangsta Dog sells a variety of products, including WILD KINGDOM Dog Food, to customers throughout the United States, including to Nebraska residents. As such, the exercise of personal jurisdiction over Gangsta Dog in this case is authorized by Neb. Rev. Stat. § 25-536 and comports with the Due Process Clause of the 14th Amendment.

5. Venue is proper in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

6. For many years prior to the acts complained of herein, Mutual of Omaha has been continuously engaged in the business of providing a variety of insurance and financial services to the general public. Mutual of Omaha has had a long-standing commitment to serving the public and its policy owners and to promoting wildlife conservation.

7. As part of its commitment to wildlife conservation, in 1963, Mutual of Omaha developed and sponsored the WILD KINGDOM television program, which relates to and promotes wildlife conservation. The original WILD KINGDOM program aired on major network television for 25 years, with more than 300 episodes, becoming a beloved Sunday night

tradition for many millions of viewers. At its peak, the WILD KINGDOM program drew an average of 34 million viewers.

8. Mutual of Omaha's WILD KINGDOM program pioneered the nature adventure genre, introducing its many millions of views to the importance of preserving wildlife by capturing and documenting the struggle for survival in nature. The WILD KINGDOM program was a cultural touchstone, inspiring generations of conservationists, filmmakers, and adventurers.

9. Over the years, the WILD KINGDOM program has received numerous awards, including several Emmy Awards, Certificates of Recognition from the American Council for Better Broadcast, and a PTA Family Viewing Recognition Award.

10. Since 1963, Mutual of Omaha has spent over $135,000,000 developing and promoting its WILD KINGDOM program and wildlife conservation and in related advertising expenditures.

11. Ever since the original WILD KINGDOM program ended its primetime television run in 1988, Mutual of Omaha has continuously promoted the WILD KINGDOM mark and made WILD KINGDOM episodes available to the public through various forms of media, including television, DVDs, the internet, and social media. Through these efforts, Mutual of Omaha has introduced the WILD KINGDOM brand to younger audiences.

12. Since 1999, Mutual of Omaha has promoted the WILD KINGDOM program on its website (currently *www.mutualofomaha.com/wild-kingdom/*, formerly *www.wildkingdom.com*).

13. Starting in 2001 and continuing through 2005, Mutual of Omaha sponsored a "Wild Kingdom Kids Summit," a national contest where children ages 9-12 submitted essays with ideas about how they could help protect the natural world. The "Wild Kingdom Kids

Summit" was promoted through school systems, the WILD KINGDOM website, and media releases. One child from each state won a trip to the "summit" held annually in Southern California to present his or her idea to WILD KINGDOM hosts Jim Fowler and Peter Gros as well as other attendees.

14. For 10 years starting in 2002, a modernized version of the WILD KINGDOM program aired on Animal Planet. Promotional DVDs of each episode were produced and sold.

15. From 2005 until 2009, Mutual of Omaha sponsored a mobile marketing program called the "Wild Kingdom Adventure Tour." The program included elaborate animatronic animals in a habitat setting, which appeared at fairs and festivals. In 2009, there were tour stops in 15 cities, drawing more than 250,000 visitors.

16. In 2009, Mutual of Omaha created a WILD KINGDOM TV Channel on YouTube and Facebook, the latter of which has more than 250,000 followers.

17. In 2011, Mutual of Omaha expanded its "Wild Kingdom Encounter" events, with hosts Jim Fowler and Peter Gros giving wildlife presentations with animals in 30 cities throughout the United States.

18. In 2013, Mutual of Omaha launched a nationwide "Wild Guide" contest to celebrate WILD KINGDOM's 50th anniversary. The contest winner, Stephanie Arne, went on to co-host a WILD KINGDOM web series, including 50 webisodes, designed for mobile-friendly viewing.

19. Classic WILD KINGDOM episodes are currently available on MeTV, YouTube, Facebook, and through Mutual of Omaha's website. In addition to the original program, Mutual of Omaha also has a new WILD KINGDOM series, titled "Mutual of Omaha's Wild Kingdom

Protecting the Wild," which is currently airing weekly on NBC and streaming on Peacock, as well as a WILD KINGDOM podcast.

20. For many years prior to the acts complained of herein, Mutual of Omaha has used the mark WILD KINGDOM on a variety of collateral products related to its WILD KINGDOM television program, including but not limited to toy stuffed animals, calendars, pencils, shirts, hats, tumblers, keychains, mousepads, backpacks, and DVDs.

21. As a result of the long period of time the WILD KINGDOM program has been aired, the excellence and popularity of that program, and the extensive advertising and promotion of that program, the WILD KINGDOM mark has become famous and is well-known to the public as a distinctive identification of Mutual of Omaha and its goods and services.

22. Mutual of Omaha is the owner of the mark WILD KINGDOM and has continuously used that mark for a television program dealing with the conservation of wildlife, as well as the rendering and promotion thereof, in interstate commerce since at least as early as 1963. A stylized version of the WILD KINGDOM mark is the subject of U.S. Registration No. 954,229, which was issued by the U.S. Patent and Trademark Office on February 27, 1973, for "entertainment services – namely, a television program dealing with conservation of wildlife." Mutual of Omaha is the owner of this valid, subsisting, and incontestable registration. A true copy of U.S. Registration No. 954,229 is attached hereto as Exhibit A.

23. As noted above, Mutual of Omaha also uses the WILD KINGDOM mark on a wide variety of collateral products that have been used to promote the WILD KINGDOM television program and Mutual of Omaha's commitment to wildlife preservation, including but not limited to toy stuffed animals, calendars, pencils, shirts, hats, tumblers, keychains, mousepads, backpacks, and DVDs. Mutual of Omaha has continuously used the WILD

KINGDOM mark for such collateral products, in interstate commerce, since their introduction, which for some products dates back at least as early as 1963.

24. Mutual of Omaha is the owner of valid, subsisting, and incontestable U.S. Registration No. 2,866,922, which the U.S. Patent and Trademark Office granted to Mutual of Omaha on July 27, 2004, for the trademark WILD KINGDOM, as used in connection with "printed materials and accessories namely calendars, bookmarks, posters, pencils and erasers." A true copy of U.S. Registration No. 2,866,922 is attached hereto as Exhibit B.

25. Mutual of Omaha is the owner of valid, subsisting, and incontestable U.S. Registration No. 2,891,341, which the U.S. Patent and Trademark Office granted to Mutual of Omaha on October 5, 2004, for the trademark WILD KINGDOM, as used in connection with "plush toys." A true copy of U.S. Registration No. 2,891,341 is attached hereto as Exhibit C.

26. Mutual of Omaha is the owner of valid, subsisting, and incontestable U.S. Registration No. 2,908,519, which the U.S. Patent and Trademark Office granted to Mutual of Omaha on December 7, 2004, for the trademark WILD KINGDOM, as used in connection with "clothing, namely t-shirts, golf shirts, outerwear, hats, jackets, button-down shirts, shorts, sweatshirts and tank tops." A true copy of U.S. Registration No. 2,908,519 is attached hereto as Exhibit D.

27. Mutual of Omaha is the owner of valid, subsisting, and incontestable U.S. Registration No. 3,333,362, which the U.S. Patent and Trademark Office granted to Mutual of Omaha on November 13, 2007, for the trademark WILD KINGDOM, as used in connection with "DVDs featuring television show episodes." A true copy of U.S. Registration No. 3,333,362 is attached hereto as Exhibit E.

28. The WILD KINGDOM marks that Mutual of Omaha has used over the years and that are the subject of U.S. Registration Nos. 954,229, 2,866,922, 2,891,341, 2,908,519, and 3,333,362 are referred to herein collectively as "the WILD KINGDOM Mark."

29. After the WILD KINGDOM Mark had become famous, and after Mutual of Omaha had obtained registrations therefor, Gangsta Dog began marketing and selling the WILD KINGDOM Dog Food, without Mutual of Omaha's authorization. The WILD KINGDOM Dog Food, pictured below, purports to be a blend of five different recipes: Water Buffalo Meal and Brown Rice, Water Buffalo Meal and Duck Meal, Salmon Meal and Brown Rice, Chicken Meal and Brown Rice, and Lamb Meal and Brown Rice.



30. According to U.S. Trademark Application No. 99/302,217 filed by Gangsta Dog's founder, Gary W. Hughes, use of the WILD KINGDOM trademark in connection with dog food began at least as early as January 15, 2011. Yet, a letter dated September 2, 2025 from Gangsta Dog's attorney to Mutual of Omaha states that use began several years later in January 2014. Either way, Gangsta Dog's first use of the WILD KINGDOM name followed well after the WILD KINGDOM Mark had become famous.

## Count I

### SERVICE MARK AND TRADEMARK DILUTION

31. As a cause of action and ground for relief, Mutual of Omaha alleges that Gangsta Dog is engaged in acts of service mark and trademark dilution in violation of § 43(c) of the Federal Trademark Act, 15 U.S.C. §§ 1125(c), and the Nebraska Trademark Registration Act, Neb. Rev. Stat. § 87-126 et. seq., and Mutual of Omaha incorporates by reference paragraphs 1 through 30 of the complaint as if set forth fully herein.

32. U.S. Registration Nos. 954,229, 2,866,922, 2,891,341, 2,908,519, and 3,333,362 are prima facie evidence of the validity of the WILD KINGDOM Mark and provide constructive notice of Mutual of Omaha's ownership thereof, as provided by §§ 7(b) and 22 of the Federal Trademark Act, 15 U.S.C. §§ 1057(b) and 1072. Further, because U.S. Registration Nos. 954,229, 2,866,922, 2,891,341, 2,908,519, and 3,333,362 have become incontestable, these registrations are conclusive evidence of the validity of the WILD KINGDOM Mark, of Mutual of Omaha's ownership of the WILD KINGDOM Mark, and of Mutual of Omaha's exclusive right to use the WILD KINGDOM Mark in commerce on or in connection with the goods and services protected by the registrations, as provided by §§ 15 and 33(b) of the Federal Trademark Act, 15 U.S.C. §§ 1065 and 1115(b).

33. Notwithstanding Mutual of Omaha's prior-established, exclusive rights in the WILD KINGDOM Mark, Gangsta Dog is currently marketing and selling the WILD KINGDOM Dog Food.

34. By virtue of Mutual of Omaha's long and extensive broadcast of the WILD KINGDOM program, use of the WILD KINGDOM mark on collateral products, and extensive advertising conducted in connection with that program and the WILD KINGDOM Mark, and

given the numerous awards the WILD KINGDOM program has garnered over the years, the WILD KINGDOM Mark became famous and entitled to protection against dilution prior to Gangsta Dog's first use of the WILD KINGDOM name.

35. Gangsta Dog's use of the WILD KINGDOM name is likely to impair the distinctiveness of the WILD KINGDOM Mark by causing the public to associate the WILD KINGDOM Mark with Gangsta Dog's WILD KINGDOM Dog Food, instead of associating it exclusively with the goods and services provided by Mutual of Omaha under the WILD KINGDOM Mark.

36. Further, Gangsta Dog's use of the WILD KINGDOM name is likely to tarnish the reputation of the WILD KINGDOM Mark because it contains ingredients, such as buffalo meal, made from animals that have been featured in WILD KINGDOM episodes, including "Buffalos of Botswana" and "Roundup on the Outback."

37. Accordingly, Gangsta Dog's use of the WILD KINGDOM name is likely to cause dilution by blurring and/or dilution by tarnishment of the famous WILD KINGDOM Mark in violation of § 1125(c) of the Federal Trademark Act, 15 U.S.C. §§ 1125(c), and Nebraska Trademark Registration Act, Neb. Rev. Stat. § 87-140, thereby damaging Mutual of Omaha.

38. On information and belief, Gangsta Dog selected the WILD KINGDOM name with knowledge of the famous WILD KINGDOM Mark and the intent to trade on the reputation and nostalgia of the WILD KINGDOM Mark and the goods and services associated therewith and/or otherwise cause dilution of the WILD KINGDOM Mark.

39. Through pre-suit correspondence, Mutual of Omaha informed Gangsta Dog of its dilution of the WILD KINGDOM Mark and requested that Gangsta Dog cease use of the WILD

KINGDOM name, yet Gangsta Dog has refused Mutual of Omaha's request and continued to use the name in willful violation of Mutual of Omaha's trademark rights.

40. Unless enjoined by this Court, Gangsta Dog will continue its acts of service mark and trademark dilution, thereby causing Mutual of Omaha to suffer immediate and irreparable injury for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Mutual of Omaha respectfully prays that:

A. The Court enter judgment that Gangsta Dog has engaged in service mark and trademark dilution under § 43(c) of the Federal Trademark Act, 15 U.S.C. § 1125(c), and the Nebraska Trademark Registration Act, Neb. Rev. Stat. § 87-140; and has otherwise injured Mutual of Omaha in the manner complained of herein; and that Gangsta Dog's actions in these regards have been willful.

B. The Court order that Gangsta Dog and each of its subsidiaries, agents, employees, sales representatives, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, be preliminarily and permanently enjoined from:

(i) using the WILD KINGDOM name or any other name, trademark, or service mark that incorporates or is confusingly similar to Mutual of Omaha's WILD KINGDOM Mark;

(ii) otherwise diluting the distinctive qualities or harming the reputation of Mutual of Omaha's WILD KINGDOM Mark; and

(iii) competing unfairly with Mutual of Omaha or otherwise injuring Mutual of Omaha in the manner complained of herein.

C. The Court order that Gangsta Dog be required to pay to Mutual of Omaha compensatory damages, with pre-judgment interest, in an amount to be determined at trial for Gangsta Dog's acts of service mark and trademark dilution, and that such damages be trebled in accordance with § 35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a), and post-judgment interest as provided by law.

D. The Court order that Gangsta Dog be required in equity to account for and pay to Mutual of Omaha the profits realized by Gangsta Dog which are attributable to its acts of service mark and trademark dilution, and that said profits be trebled.

E. The Court order, pursuant to § 36 of the Federal Trademark Act, 15 U.S.C. § 1118, that Gangsta Dog be directed to destroy all advertisements, literature, labels, signs, prints, packages, merchandise, decals, and other materials in its possession, custody, or control that bear or are labeled with the WILD KINGDOM name.

F. The Court order that Gangsta Dog be required to pay to Mutual of Omaha the costs of this action and Mutual of Omaha's reasonable attorney fees, in accordance with § 35 of the Federal Trademark Act, 15 U.S.C. § 1117(a), and the Nebraska Uniform Deceptive Trade Practices Act and Trademark Registration Act.

G. The Court order Mutual of Omaha be granted such other, different, and additional relief as this Court deems equitable and proper under the circumstances.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Nebraska Local Civil Rule 38.1, Mutual of Omaha hereby demands trial by jury as to all issues so triable in this civil action and designates Omaha as the place of trial.

Dated this 21st day of October 2025.

        MUTUAL OF OMAHA INSURANCE
        COMPANY, Plaintiff

By:  /s/ Timothy J. Thalken
     Timothy J. Thalken #22173
     FRASER STRYKER PC LLO
     500 Energy Plaza
     409 South 17th Street
     Omaha, NE 68102
     Phone: 402.978.5285 | Fax: 402.341.8290
     tthalken@fraserstryker.com

     Edmund J. Haughey (to be admitted *pro hac vice*)
     VENABLE LLP
     600 Massachusetts Avenue, NW
     Washington, DC 20001
     Phone: 202.721.5489 | Fax: 202.344.8300
     ehaughey@venable.com